McCARN v. WILCOX

**1. EQUITY PLEADING—BILL TO DISCHARGE A MORTGAGE—DEFENSES —CROSS-BILL.**

Under a bill filed for the sole purpose of securing the cancellation of a mortgage alleged to have been paid, a cross-bill will not lie to enforce the specific performance of a parol agreement by complainant to convey to defendant an undivided interest in the premises, or to declare a prior conveyance of the land from defendant to complainant to have been intended as security only; nor will such matters constitute a defense to the suit. Defendant's remedy in such case is by an independent suit in chancery.

**2. STATUTE OF FRAUDS—PAROL TRUST IN LANDS.**

One who conveys land to the purchase of which both he and his grantee have contributed, relying merely upon the latter to do equity as between them, is remediless under the statute of frauds.

**3. MORTGAGE—PAYMENT—SUBROGATION OF MORTGAGOR.**

Whether a mortgagor who has conveyed by a full covenant warranty deed can, upon paying his mortgage debt and taking an assignment, become subrogated to the rights of the mortgagee by reason of an alleged equity in the premises,—*quære.*

Appeal from Allegan; Padgham, **J.** Submitted May 21, 1895. Decided July 2, 1895.

Bill by Myron H. McCarn, administrator of the estate of Eliza Wilcox, deceased, and others, against Gilblas Wilcox, Samuel H. Wilcox, and John M. Granger, to procure the cancellation and discharge of a mortgage. From a decree for complainants, defendants appeal. Affirmed

*Charles R. Wilkes,* for complainants.

*W. B. Williams & Son,* for defendant Gilblas Wilcox.

GRANT, J. The bill in this case was filed by the administrator and the heirs of Eliza Wilcox, deceased, to procure the cancellation and discharge of a mortgage for

$400, executed by defendant Gilblas Wilcox and his wife, Eliza, June 29, 1872, to defendant Granger. Decree was entered for the complainants.

The mortgage was upon a farm of 40 acres. It was deeded to Gilblas June 29, 1872, and on the same day Gilblas, by a warranty deed, conveyed it to Eliza. The consideration of the deed to Gilblas was $1,250, of which Eliza paid either $600 or $680. The $400 obtained on the Granger mortgage was also applied in payment of the purchase price, and Gilblas paid the remainder,—either $250 or $170. Although the deeds and mortgage bear date the same day and were simultaneous transactions, the mortgage and note were executed while the title was in Gilblas, and she executed the mortgage solely as his wife, the note being executed by him alone. In 1879, Gilblas and his wife moved upon this land, and occupied it as their home until her death, June 5, 1892. At the time of their marriage she was a widow and he a widower, and each had children by the former marriage. They worked the farm until 1884. She then leased the premises to her son by a former marriage, the rental being $50 per year and the support of Mr. and Mrs. Wilcox, except a year or two when he leased it on shares. It appears that she paid some upon this mortgage, and the bill admits payments made by him to the amount of $561. He made the last payment, and requested Mr. Granger not to discharge the mortgage, for the reason that he desired to hold it for the purpose of maintaining his rights and equities in the land. Subsequently, Mr. Granger assigned the mortgage to Gilblas, and Gilblas assigned it to defendant Samuel.

The answer of Gilblas admits the conveyances, but asserts that he has equitable rights in the land. He alleges that the deed was made by him for the purpose of fully protecting the said Eliza Wilcox for her portion of the purchase money therein; that the consideration expressed in said deed was intended to be the consideration for the moneys paid by her on said purchase, and

that said deed was not intended as a gift or gratuity in any manner; that the dealings between them in regard to said premises were in entire confidence that each would do in reference to the other as would be just and equit- able in regard to their respective rights therein, until, some time in the year 1879, and after they had moved on said premises, this defendant ascertained that the said Eliza Wilcox was not willing to make any adequate arrangement in regard to the title of said premises to protect this defendant and his interest therein; and that, after learning such facts, he did not have indorsed upon said note and mortgage the moneys paid by him to said Granger, but took his receipts therefor. Defendant admits that Eliza paid $600 of the purchase money, and asserts that he paid $650,—$250 in cash, and the Granger mortgage. He then alleges that—

"She at the time of her death had no greater interest in said premises in proportion to this defendant's interest therein than the said sum of $600 is to the said sum of $650, so paid and obligated to be paid in by this defend- ant, except for whatever sums of money have been allowed against the estate of said Eliza for improvements made upon said premises, which amount fully appears from the records and files in the estate of said Eliza Wilcox in the probate court for the county of Allegan."

Upon the answer, which was also filed in the nature of a cross-bill, he prays—

"That the respective rights and interests of this defend- ant and the said complainants, children and heirs at law of Eliza Wilcox, in and to said premises, may be fully adjusted in accordance with the amounts paid therefor by him and by her; that the premises may be sold under the order and decree of this court, and the proceeds thereof applied *pro rata* according to their respective rights and interests therein."

A demurrer was interposed to the cross-bill, and sus- tained, but it was permitted to stand as an answer to the bill of complaint.

The defendant does not ask in his answer to be subro-

gated to the rights of the mortgagee under his assignment from him; nor is this question presented in the briefs. Possibly, he would not be entitled to any such relief, inasmuch as he was the original debtor, and made payments in extinguishment of his debt, which would carry with it the cancellation of the mortgage. Neither does he ask to have the deed declared a mortgage. Nor does he ask for the specific performance of a parol contract to convey to him one-half interest in the land upon the payment of the Granger mortgage. Had he relied upon either, he should have filed a bill in equity. Neither of these constitutes a proper defense in an answer, or a proper subject for a cross-bill, to a bill filed solely for the purpose of securing the cancellation and discharge of a mortgage. There is no such relation between these claims as to make them the proper subject of controversy in the same suit. If it be a fact that Mrs. Wilcox refused to part with her money for the purchase of this land unless a deed was made to her, and he chose to place the title in her, relying upon her to do equity between them when the mortgage was paid, he is entitled to no relief. It is unnecessary to cite authorities to show that such a transaction would be within the statute of frauds.

It is undoubtedly true that Mrs. Wilcox contributed $600 to the purchase of this land; that he contributed $250; and that, by their joint efforts, they paid the mortgage. It is a hardship and probably an injustice that he should now be deprived of any interest in the land, but courts of equity cannot ignore the well-settled rules of law. He knew in 1879 that she denied that he had any interest in it. It is conceded that the mortgage is paid, and that it is necessary to sell the land in order to pay the claims allowed against the estate. It cannot sell to advantage with this mortgage undischarged, for, if it still exists, the amount now due would be more than half the value of the land. The necessity of discharging the mortgage is therefore apparent. Gilblas' interest, if he has

any, can be enforced only in an independent suit in chancery.

Decree affirmed, with costs.

The other Justices concurred.